Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 980 | **DATE** | 4/24/2002 |
| **CASE TITLE** | Mary Reed vs. Manteno School Dist. No. 5 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [19-1] is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 2 5 2002 | 39 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 4/24/2002 | |
| KF | courtroom deputy's initials | date mailed notice / KF mailing deputy initials | |

Date/time received in central Clerk's Office



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY MARGARET REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 0980 |
| v. ) | |
| ) | |
| MANTENO SCHOOL DISTRICT NO. 5, ) | Mag. Judge Mason |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Mary Margaret Reed is a female over the age of forty. In 1971, defendant, the Manteno School District No. 5 ("MSD"), hired her as a classroom teacher. She remained as a teacher in the classroom until 1994 when she became the MSD's Director of Student Development. In 1999, the MSD eliminated the position of Director of Student Development, reassigned Reed to teach a fourth grade class, and did not promote her to an interim principal position that became available for the 1999-2000 school year at a newly constructed school. In 2000, Reed applied and interviewed for another principal position; she did not get the promotion. Reed is currently teaching fourth grade in the MSD. In filing this lawsuit, Reed claims that the MSD discriminated against her based on her gender and age by demoting her from Director of Student Development to classroom teacher and by not promoting her to three principal



positions.[1] Reed further claims that she was unfairly reprimanded[2] and did not receive one of the principal positions in retaliation for filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The MSD has filed a motion for summary judgment, arguing that Reed was not demoted and that she does not have any evidence that her failure to receive a principal position was in any way related to her age or gender or that it was a result of retaliation. For the following reasons, we grant MSD's motion.

**Facts**

The following facts have been pieced together from the parties' vague and at times confusing and inaccurate 56.1 statements, and are undisputed except where noted. Reed is a female over the age of forty who has been employed by the MSD from 1971 until the present. Between 1971 and 1994, Reed was a teacher assigned to a classroom. The MSD contends that from 1994 to 1999 Reed was a teacher assigned to Manteno Middle School as Director of Student Development. Reed contends that the Director of Student Development was not a teaching position, but an administrative position akin to an associate principalship. It is undisputed that the Director of Student Development position that was created in 1994 was the only position of its kind in the school district, and has not been reestablished since its elimination in 1999.

---

[1] Reed's complaint alleges that she did not receive three principal positions for which she was qualified. However, the briefs she submitted to Court only discuss two positions, those awarded to Andrew Furbee and Trent Eschleman. We will not entertain conjecture as to what the third position was and consequently will not address it in this opinion.

[2] In her complaint, Reed alleges two instances of unfair reprimand in retaliation for filing a discrimination charge with the EEOC. Reed was reprimanded for not escorting students from a classroom to the lunchroom and for expressing gratitude to community members for donating a desk to her. However, neither party addresses these claims in their briefs and will not address them in this opinion.

During the 1999-2000 school year, the MSD opened a newly constructed intermediate school.[3] In preparing to open the additional school, MSD changed its administrative structure, which required an increase in the number of principal positions. Dr. Newton Fink ("Fink") became superintendent of the MSD in November 1998 and implemented the restructuring decisions made by the Manteno Board of Education ("MBE"). In a June 16, 1999 meeting, the MBE eliminated the position of Director of Student Development, reassigned Reed to a fourth grade classroom and appointed Andrew Furbee, principal of Indian Oaks School, to serve the dual role of one year interim principal and Special Education Director for the new intermediate school. Prior to reassigning Reed, the MBE received a memo dated June 1, 1999 from Fink, which recommended that Reed not receive a middle school assistant principal position[4] because Fink felt that Reed was not a "team player" and because he did not trust her.[5] Reed contends that both the elimination of her position and her reassignment to a

---

[3] From the parties submissions, we can surmise that when the MSD reorganized and created the new intermediate school, the names of and grades served by the existing schools changed. However, the names of the resulting schools are not clear. Plaintiff says that currently MSD has a primary school for kindergarten and first grade, an Elementary School for second through fifth grade, a middle school for sixth through eighth grade, a high school for ninth through twelfth grade, and Indian Oaks, the special education school. The defendant says that MSD has an elementary school for first through third grade, an intermediate school for fourth and fifth grade, a middle school for sixth through eighth grade, and a high school for ninth through twelfth grade, as well as Indian Oaks School.. The inability of the parties to agree on terminology has made analyzing this case difficult.

[4] The record is unclear as to whether the assistant principal position was an open, existing position or whether the MBE was contemplating or had decided to create a new position. Regardless, this distinction is not important since Reed did not address an assistance principal position in her complaint.

[5] The June 1, 1999 memo revealed that the MSD administration, with the exception of the two administrators at the middle school where Reed worked, believed that Reed and other "key teachers" unfairly wielded the power at the school, making decisions that were contrary to the rest of the MSD administration. For example, it alleges that Reed "sold the administration and Board out" with regard to the selection of a middle school principal. The memo suggests that reassigning Reed to a teaching position in another school would hopefully break the connection between the problematic teachers and allow the administration to regain control.

3

classroom were a result of Fink's memo. The MSD agrees that it reassigned Reed to the classroom based on Fink's recommendation, but denies that Fink had anything to do with the elimination of the Director of Student Development position. It contends that Reed's position as Director of Student Development was eliminated as a result of the school district's administrative restructuring to accommodate the new school.

During a June 4, 1999 meeting in his office, Fink told Reed about the changes: that a new intermediate school was opening in the fall of 1999, that the position of Director of Student Development was being eliminated, and that the principals at the various district schools would assume her former duties. Further, Fink told Reed that she was going to be reassigned to a classroom teaching position for the 1999-2000 school year.[6] The reassignment did not result in a reduction in Reed's salary or benefits. At the meeting, Reed expressed an interest in being promoted to the intermediate school principalship. Fink suggested that she send him a letter documenting her interest in the principal position and she did, although the parties' briefs do not indicate when this occurred.

The MSD explains that it did not place Reed in the intermediate school principal job because it was not a new vacancy for which individuals could apply, but an entirely new position created to assist in the district's restructuring and intended to exist for only one year. Defendant filled the position by laterally transferring Furbee to the intermediate school. In addition to serving as principal, Furbee was also the Special

---

[6] On June 4, 1999, Reed was informed that she would be teaching a first grade class for the 1999-2000 school year. Shortly thereafter Reed was reassigned to teach a fourth grade class.

4

Education Director at the intermediate school for the 1999 - 2000 school year. Consequently, both departments' resources funded his salary. Furbee could act as the Special Education Director because he had completed special education courses and was approved to teach special education by the state.

After being reassigned to a classroom and not receiving the intermediate school principal position, Reed filed a discrimination complaint with the EEOC in November 1999. The claim alleged age and gender discrimination manifested in her demotion from Director of Student Development to classroom teacher and her denial of a promotion to intermediate school principal. In 2000, Reed applied to be the principal of the middle school.[7] The principal selection committee interviewed Reed and two other candidates for the position and ultimately recommended that the MBE hire Trent Eschleman, a male under the age of forty. The MBE approved the committee's choice and named Eschleman as the new middle school principal.

Eschleman was the unanimous choice of the selection committee and scored the highest on the committee's interview evaluation forms. Reed contends that the committee's interview questions were subjective and that the committee did not inquire about objective qualifications like number of degrees or years of experience. Reed specifically disliked at least one interview question which asked about being an administrative team player – the trait she was faulted for lacking at the time of her reassignment a year earlier. However, Reed admits that she has no evidence that the district's process for selecting principals was flawed and she was never told that she did

---

[7] This middle school is different from the new "intermediate school." The parties do not address what happened to the intermediate school or the interim principalship Furbee had assumed in 1999.

5

not receive the middle school principal position because of her age or gender.

**Legal Analysis**

Summary Judgment is appropriate where there are no disputed material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P 56(c).

The MSD contends that it is entitled to summary judgment on counts two and three of Reed's complaint because they were not included in her EEOC charge. The MSD argues that Reed must exhaust her administrative remedies with the EEOC before filing a claim in Federal Court. Reed contends that she was not required to file a separate EEOC for counts two and three. We agree with Reed and find that although counts two and three were not included in her EEOC charge, they are not barred.

A plaintiff may bring claims not explicitly in her EEOC charge if the claims are like or reasonably related to the allegations in the EEOC charge, or the claims grow out of the allegations made in the EEOC charge. *Jenkins v. Blue Cross Mutual Hospital Ins. Inc.*, 538 F.2d 164 (7th Cir. 1976) (en banc). On motion for summary judgment, this court reads charges of discrimination liberally. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 763 (7th Cir. 2001). The claims are like or reasonably related if there is a factual relationship between them, if the complaint describes the same conduct and implicates the same individuals. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Reed filed an EEOC charge alleging age and gender discrimination after the MSD gave Furbee, a younger male, a principal position for which she applied. Count two alleges age and gender discrimination after the MSD gave Eschleman, a younger male, a principal position for which Reed applied. Count

two is like and reasonably related to the allegations in Reed's EEOC charge because it describes the same conduct, denial of a principal position, and implicates the same individuals, administrators of the MSD; thus it is not barred. The MSD attempts to distinguish the two incidents by arguing that Reed did not apply for the position Furbee received, but did apply for the position awarded to Eschleman. That factor does not sufficiently differentiate the two situations.

Count three, Reed's claim of retaliation, is not barred because a "separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989). Count three alleges that Reed did not receive the middle school principal position in retaliation for filing the EEOC claim, and thus did not require a separate filing.

In this case there is only one disputed fact, and it is not material to our analysis. The MSD contends that Reed was a teacher in its district from 1971 until the present and that the position of Director of Student Development was a teaching position. In her affidavit attached to her 56.1 statement, Reed contends that the Director of Student Development was an administrative position akin to an assistant principalship and was not a teaching position because she did not teach. This assertion is contrary to her deposition testimony and collective bargaining agreements. In her deposition Reed admitted that from 1994-1999 she was classified as a reassigned teacher and maintained a teacher's contract and teacher days. Moreover, Reed's position from 1994-1999 was considered a teaching position according to her union collective bargaining agreement. Furthermore, Reed has no evidence other than her own

7

testimony that the Director of Student Development was "akin to an assistant principalship." "An affidavit cannot be used to create a genuine issue of material fact where the affidavit differs from prior deposition testimony to the point that it is unreliable." *Clark v. Takata Corporation*, 192 F.3d 750, 760 (7th Cir. 1999) quoting *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 710 (7th Cir. 1998). In this case, Reed's affidavit differs from her deposition testimony to the point that it is unreliable and thus does not create a genuine issue of fact. Moreover, this issue is not material to the summary judgment outcome as will be illustrated below.

Reed's complaint alleges unfair demotion, failure to promote and retaliation with regard to two specific instances of age and gender discrimination – her failure to receive the two principalships. In her 56.1 statement Reed conceded that there is no direct evidence of gender or age discrimination, thus we must analyze each allegation according to the indirect method of proof first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, Reed must first make a prima facie case of discrimination. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998), citing *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 302 (7th Cir. 1996). If Reed succeeds in making a prima facie case, the MSD must come forth with a legitimate, non-discriminatory reason for its actions. *Id.* Once it does so, the burden shifts back to Reed to set forth evidence that the MSD's reason for its action is pretext, meaning that it is dishonest or a lie. See *Wolf v. Buss Am., Inc.*, 77 F.3d 914, 919-20 (7th Cir. 1996).

Because the elements of a prima facie case of discrimination under the theories

of unfair demotion, failure to promote and retaliation are different, we will analyze each separately beginning with the unfair demotion claim.

**Unfair Demotion**

First, Reed alleges that MSD's act of reassigning her to a classroom position was a demotion. To make a prima facie case of discrimination under an unfair demotion theory, Reed must show that, 1) she is a member of a protected class; 2) she was performing her duties satisfactorily; 3) she was demoted; and 4) MSD treated similarly situated employees outside of Reed's protected class more favorably. See *Foster v. Arthur Anderson*, 168 F.3d 1029, 1035 (7th Cir. 1998).

In certain circumstances, like the instant case, a plaintiff need not prove the fourth prong of a prima facie demotion case. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir. 1996). The fourth prong requires that Reed show that the MSD treated similarly situated people outside of her protected class more favorably. However, there were no other employees similarly situated to Reed. She held the only Director of Student Development position in the MSD and thus her inability to show that others outside her class were treated more favorably does not hinder her case.

However, her inability to satisfy the third element of the prima facie case is fatal to her claim. Reed argues that the MSD discriminated against her by demoting her from Director of Student Development to classroom teacher. The MSD argues that Reed cannot make a prima facie case of discrimination because Reed did not suffer an adverse employment action when she was merely reassigned to a different teaching position. Even viewing the facts in the light most favorable to the plaintiff, we cannot

9

find an adverse employment action. When a person experiences a job transfer without a loss in salary or benefits, as is true in this case, she must show a materially adverse change in the terms and conditions of employment that are more disruptive than a mere inconvenience or an alteration of job responsibilities. *Crady v. Liberty National Bank and Trust Company of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993).

Reed admitted in her deposition that for the duration of her employment in the MSD she has been considered a teacher under her contracts and collective bargaining agreements. She also agrees that her reassignment from Director of Student Development to classroom teacher did not result in a decrease in salary or benefits and that her working hours remained the same. Her claim of discrimination stems solely from a change in her responsibilities and title. Reed also alleges that the community viewed her reassignment as a demotion and that she was publicly humiliated. However, "public humiliation" is not sufficient to establish a demotion because public perception was not a term or condition of Reed's employment. *Spring v Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989). Moreover, a change in title and responsibilities is not sufficient to establish a demotion. *See Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir., 1994) (An ADEA plaintiff does not establish a prima facie case by showing only that a job transfer would cause personal inconvenience or altered job responsibilities). Reed returned to teaching in a classroom, something she had done in the MSD for thirteen years. This was not akin to a constructive termination; her responsibilities did not decrease, they changed. Since Reed was employed as a teacher for the duration of her employment with the MSD, it had the authority to assign

her to whatever type of position it deemed appropriate.

Even if we accept Reed's contention that she suffered an adverse employment action, she fails to show that the MSD's legitimate and nondiscriminatory reasons for eliminating the Director of Student Development position and reassigning her to teach a classroom are pretextual. To show pretext, Reed must present evidence from which we may infer that the MSD did not honestly believe the reason they gave her for the elimination of her job or her reassignment. *Michas, v. Health Cost Controls of Illinois*, 209 F.3d 687,695 (7th Cir. 2000). To demonstrate pretext, "a plaintiff must show more than that the employer's decision was incorrect, the plaintiff must also show the employer lied about its proffered explanation." *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998). The MSD contends that the MBE made the decision to eliminate the position of Director of Student Development as part of a district reorganization to accommodate the new intermediate school. Reed does not disagree that the MBE made the ultimate decision to eliminate her position, but she contends that the reason given – the restructuring – is a lie, and that the real reason was Fink's June 1, 1999 memo. The MSD does not deny that Reed was reassigned to a classroom based on Fink's recommendation, but explains that its decision to eliminate the position of Director of Student Development was independent of the memo and would have occurred without it. Indeed, the June 1, 1999 memo merely advised the MBE not to give Reed an assistant principal position in the middle school because Fink felt that she did not have the ability to be a good administrator; it did not address the elimination of the Director of Student Development position or who to name as interim intermediate

11

school principal.

Reed does not provide any evidence that the MSD did not believe that they needed to reorganize the administrative structure of the MSD and eliminate the position of Director of Student Development in preparation for opening the new intermediate school. She also does not disagree that the new intermediate school needed a principal or that the new principal took over the duties formerly handled by the Director of Student Development. There is no evidence that the MSD or MBE lied to Reed about either the elimination of her first position or her reassignment back to a classroom. The fact that Reed disagrees that the district's reorganization required the elimination of her position does not establish pretext. And the fact that the MBE transferred her back to a classroom because Fink wanted her there instead of moving her to some other, undiscussed job also does not show that defendant's reasons for its actions were a lie. Thus, we grant summary judgment to defendant on Reed's demotion claim.

**Failure to Promote**

Next we will examine Reed's failure to promote claims. To make a prima facie case of discrimination under a failure to promote theory, Reed must show that, 1) she is a member of a protected class; 2) she applied for and was qualified for an open position; 3) she was rejected; and 4) the MSD filled the position with a person not in her protected class or the position remained open. *Mills v. Health Care Services Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

In this case, Reed argues that the MSD discriminated against her by not promoting her to two principal positions for which she applied. Andrew Furbee received

the first principal position and Trent Eschleman received the second position. The MSD argues that Reed cannot make a prima facie case with regard to the principal position that Furbee received and that she cannot show pretext for either of the positions.

We find that Reed can establish a prima facie case of discrimination for both principal positions. Reed was a member of a protected class, women over 40 years of age, and she applied for open positions. The MSD contends that Reed did not apply for the interim principal position, and it is correct that Reed did not fill out a formal application for the job. However, she did convey her interest in the position to her employer, Fink. The failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey her interest in the job to her employer. *Cones v. Shalala*, 199 F.3d 512 (D.C. Cir. 2000); *EEOC v. Metal Services Co.*, 892 F.2d 341, 348 (3rd Cir. 1990). Reed applied for the intermediate school principal position that Furbee received during her meeting with Fink on June 4, 1999; during that meeting Fink implied that the position was still open when he told Reed to write a letter expressing her interest in it, which she did. It is uncontested that Reed applied for the second principal position that Eschleman received. Reed was rejected for both positions and they were both filled by people not in her protected class, namely Furbee and Eschleman, males under the age of forty.

Although Reed established a prima facie case of discrimination, the MSD provided legitimate non-discriminatory reasons why Reed did not receive each of the principal positions. The MSD explains that Furbee received the intermediate school

principal position because it was an interim position and the district made a lateral move. Moreover, he served the dual role of principal and Special Education Director and thus was able to take advantage of two department's budgets.

After the MSD meets its burden of providing a legitimate, non-discriminatory reason for its actions, the burden shifts to Reed to demonstrate that those reasons are pretext. However, Reed fails to do so. As we stated above, to demonstrate pretext, "a plaintiff must show more than that the employer's decision was incorrect, the plaintiff must also show the employer lied about its proffered explanation." *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998). Reed attempts to show pretext by arguing that she was more qualified than Furbee.[8] However, even if true, her subjective belief that she was more qualified is not valid pretext rationale. *See Mills v. First Fed. Sav. & Loan Assn. of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996).

Reed also suggests that it was the MBE's consideration of Fink's memo, and not Furbee's qualifications, that caused it to select Furbee as intermediate school principal over her. However, the existence of the memo does not demonstrate pretext. Indeed, the MSD does not deny the role that the memo played in Reed's reassignment, and there is no evidence that the memo influenced the MBE in any of its other decisions.[9]

---

[8] Reed contends that her qualifications were superior to Furbee's because she had a Ph.D. However, she does not dispute that Furbee was a sitting principal in the MSD and was qualified to be the Special Education Director. Reed had never held the position of principal and not approved by the state to teach special education.

[9] Even though we credit Reed's argument that she did in fact apply for the principal position eventually given to Furbee, the evidence adduced by the parties suggests that the decision to appoint Furbee had been basically made before Reed indicated her interest in the job. That is, Reed was not made principal because Furbee had already been selected. In any event, defendant does not deny the role the memo played in Reed's reassignment; whether it was used as a reason to place her in a classroom or as a reason not to promote her to principal is of no import.

14

The MSD's legitimate nondiscriminatory reason for awarding Eschleman the middle school principal position over Reed is the unanimous decision of the principal selection committee that Eschleman was a better candidate, and the MBE's agreement with the committee. Reed has not offered any evidence to show that this reasoning is pretextual. The record contains interview evaluation forms and affidavits from members of the selection committee. Both sources ranked Eschleman the highest and Reed the lowest of the candidates interviewed for the position. Reed attempts to establish pretext by arguing that the interview questions were subjective and unfair. However this does not establish pretext. The question to ask is "whether the employer honestly believed its proffered reason for not promoting the employee. The fact that the employer was mistaken or based its decision on bad policy is not evidence that the reason given is pre-textual." See *Croft v. Little People's Place*, 2001 WL 1524496 (N.D. Ill. November 28, 2001). Thus, we grant summary judgment for defendant on Reed's promotion claims.

**Retaliation**

Lastly, Reed argues that the MSD retaliated against her for her complaints to the EEOC. To establish a prima facie case of retaliation Reed must show that 1) she engaged in protected activity; 2) she suffered an adverse job action; and 3) there is a causal link between the protected activities and the adverse job action. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 765 (7th Cir. 2001).

Reed engaged in protected activity by filing an EEOC charge of discrimination after she failed to receive the intermediate school principal position, and suffered an

15

adverse job action when she was denied the middle school principal position. However, Reed failed to establish a causal link between her filing of the EEOC charge and her failure to receive the middle school principal position. As discussed above Reed did not receive the middle school principal because the selection committee felt that Eschleman was a better candidate and rated him higher on the evaluation forms. Reed failed to prove that this explanation was pretextual and offers no link between her EEOC charge and her failure to be promoted. Thus, Reed cannot establish that her failure to receive the middle school position was in retaliation for filing her EEOC charge.

For the reasons stated above, we grant summary judgment for the defendant. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: April 24, 2002